(85 App. Div. 424.)

### HUTCHINSON et al. v. STADLER et al.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1. CORPORATIONS—ILLEGAL PAYMENT OF DIVIDENDS—RECOVERY BY CORPORATION.
    A corporation's right to enforce a cause of action against a director who has rendered himself liable to it by an illegal disposition of its capital in dividends is not impaired because the enforcement of the liability will be an advantage to stockholders over what they would have been entitled to had the directors complied with the law.

2. SAME—FOREIGN CORPORATIONS—LIABILITY OF DIRECTORS—PENAL LAWS.
    New Jersey General Corporation Law, § 30 (P. L. 1896, p. 286, c. 185), subjecting directors to liability for dividends paid from the capital stock of the corporation, is not a penal statute, within the rule that a state will not enforce the penal laws of another.

3. SAME—ACTION TO ENFORCE LIABILITY—JURISDICTION.
    The liability of a director of a New Jersey corporation, imposed by New Jersey General Corporation Law, § 30 (P. L. 1896, p. 286, c. 185), for the amount of dividends paid out of the capital stock, cannot be enforced in New York solely under such law, though the corporation does business in New York, and the illegal dividends are declared and paid there, since it is a liability imposed by the statute of another state, which neither rests on the common law nor is contractual in its nature.

4. SAME.
    Under Stock Corporation Law, § 60 (Laws 1897, p. 314, c. 384), authorizing a foreign corporation transacting business in New York to enforce against its directors a liability for making unauthorized dividends to the same extent as the directors of a domestic corporation would be liable, Laws 1892, p. 1829, c. 688, § 23, declaring that the directors of a domestic corporation, who join in making an unlawful dividend out of its capital, shall be jointly and severally liable to the corporation for the full amount of the capital divided, and New Jersey General Corporation Law, § 30 (P. L. 1896, p. 286, c. 185), imposing on directors a similar liability, a New Jersey corporation transacting business in New York may sue in the latter state to recover from its directors, jointly and severally, capital divided among its stockholders in dividends.

Appeal from Special Term, New York County.

Action by Archibald A. Hutchinson and others, as stockholders of the American Malting Company, against Charles A. Stadler and an-

other.   From a judgment for defendant Stadler, plaintiffs appeal.   Reversed.

Argued before HATCH, PATTERSON, INGRAHAM, McLAUGHLIN, and LAUGHLIN, JJ.

John A. Garver, for appellants.
Thomas Thacher, for respondents.

INGRAHAM, J.   There are two causes of action set up in the complaint—the first to require the defendant Stadler, a director of the defendant corporation, to account for and pay to the defendant corporation certain dividends, amounting to $1,855,350, made and paid out of the capital stock of the said company; and the second to require the defendant Stadler to account for and pay to the said corporation $650,000, damages sustained by the defendant corporation by certain alleged illegal, negligent, fraudulent, and careless management of the property and affairs of the defendant corporation by its directors.   The defendant Stadler answered, and the case was brought on for trial at the Special Term.   After counsel for the plaintiffs had opened the case, the defendant moved to dismiss the complaint with respect to each of the causes of action stated, on the ground that the facts stated were not sufficient to constitute a cause of action, and also upon the ground that the facts stated in the complaint, as limited by the opening, did not justify a judgment against the defendant.   This motion was granted, and the complaint dismissed.

An examination of the opening of counsel for the plaintiffs fails to show that there was any statement which at all limited the allegations of the complaint.   In the case of Hoffman House v. Foote, 172 N. Y. 348, 65 N. E. 169, it was held that a judgment dismissing a complaint upon the pleadings and opening cannot be sustained without adopting one of three positions incumbent upon the defendant to clearly establish:   First, that the complaint does not state a cause of action; second, that a cause of action well stated is conclusively defeated by something interposed by way of defense and clearly admitted as a fact; or, third, that the counsel for the plaintiff in his opening address, by some admission or statement of facts, so completely ruined his case that the court was justified in granting a nonsuit; that the practice of disposing of cases upon the opening of the counsel cannot be resorted to unless the counsel stating the case deliberately and intentionally states or admits some fact that, in any view of the case, is fatal to the maintenance of the action.   The defendant, to sustain this dismissal of the complaint, must establish that, admitting all the facts therein alleged, there was no cause of action which would entitle the plaintiffs to any relief against the defendant.

We are thus brought to a consideration of the complaint as if the question were presented upon a demurrer to each of the causes of action on the ground that the complaint failed to state a cause of action.   The plaintiffs sue on their own behalf and on behalf of all the other stockholders of the American Malting Company similarly situated.   The complaint alleged that the American Malting Company is a stock corporation, organized under the laws of the state of New Jersey, the plaintiffs being owners of shares of the common stock of

said corporation; that the general corporation law of the state of New Jersey (P. L. 1896, p. 286, c. 185, § 30) provides that "no corporation shall make a dividend except from the surplus or net profits arising from its business, nor divide, withdraw, or in any way pay to the stockholders, or any of them, any part of its capital stock, or reduce its capital stock, except according to this act, and in case of any violation of the provisions of this section, the directors under whose administration the same may happen shall be jointly and severally liable, at any time within six years after paying such dividends to the corporation to the full amount of the dividend made or capital stock so divided, withdrawn, paid out or reduced, with interest on the same from the time such liability accrued"; that the defendant corporation complied with the provisions of the general corporation law of the state of New York to enable it to do business in this state, and received from the secretary of the state of New York a certificate to that effect, and in pursuance of such certificate has transacted business continuously in this state, and has its main business office in the city of New York; that a large portion of its property has been and still is in the state of New York, its board of directors having held and still holding their meetings in the city of New York, and that its business generally is carried on, transacted, and conducted from its office in the city of New York, and the acts and business transactions and management of said company by said board of directors thereafter in the complaint set forth were done and had and carried on in this state; that the defendant Stadler had been a director of the corporation from the time of its incorporation, on October 1, 1897, until the commencement of the action, and as such director took part in the administration of all the affairs of the said corporation, and aided in, consented to, voted for, and ratified the acts of, the board of directors of said company referred to in the complaint; that the said corporation, while the defendant Stadler was a director thereof, from October 1, 1897, to November 9, 1899, voted for, made, declared, and paid quarterly dividends at the rate of 1¾ per cent. per quarter on the preferred stock outstanding of the company, and that the dividends so made, declared, and paid amounted in all to the sum of $1,855,350; that the defendant Stadler was present when the said dividends were made, and consented thereto, and voted for, authorized, and ratified the making and payment of all of said dividends, and that during the period for which said dividends were made, voted, and paid the defendant corporation did not make any surplus or net profits in its business, and had no surplus or net profits arising therefrom, and the said directors and corporation in so making, declaring, and paying said dividends on said preferred stock did fraudulently, willfully, negligently, illegally, and contrary to the said laws and statutes of the state of New Jersey, and sections 23 and 60 of the stock corporation law (Laws 1890, p. 1070, c. 564, as amended by Laws 1892, p. 1829, c. 688, and Laws 1897, p. 314, c. 384) of the state of New York in such case made and provided, make, declare, and pay said dividends, and, contrary to the laws and statutes of the state of New Jersey and of this state, divide, withdraw, reduce, and pay to the preferred stockholders of said corporation the capital stock of said corporation to the extent of such dividends; that

before the commencement of this action the plaintiffs, being stockholders of the said corporation, demanded of the board of directors of the defendant corporation that such board take and institute on behalf of the defendant corporation legal proceedings against the directors under whose administration said illegal and unlawful dividends were so made, declared, and paid and happened, and who participated in making, declaring, and paying said illegal dividends, and under whose administration said illegal withdrawal, reduction, division, and paying to the preferred stockholders of the capital stock of the said corporation was made, to recover back from the said directors the full amount of said dividends which were declared and paid, not out of the surplus profits or net profits, but out of the capital stock of the said company; and that the directors of the said company, and the said defendant company, before the commencement of this action, refused and neglected, and still refuse and neglect, to bring the said legal proceedings; and further alleges that a majority of the directors in office at the time of the commencement of this action were directors of the company who participated in declaring and paying such illegal dividends, and are therefore liable to account to the company for the dividends thus illegally paid by them, and the board of directors of the defendant corporation and the said corporation were at the time of the commencement of the action in control of the said corporation; that the plaintiffs have at all times been, and now are, ready and willing and each for himself offers to pay back to the corporation all dividends or portions thereof which were received by them on any preferred stock of said company at any time held by them, and that the plaintiffs are ready and willing and offer to do any and all acts and perform all obligations which to the court may seem just and equitable in the premises.

In considering this cause of action, it must be apparent, I think, that the sole question presented is whether the courts of this state will enforce such a liability against the directors of a corporation organized under the laws of a foreign state where the corporation itself does business in this state, and the alleged illegal acts were performed here, and the illegal dividends declared and paid here. In considering this question, we must keep clearly in mind that the action is brought upon a cause of action vested in the corporation, and to enforce a claim of the corporation against one of its directors. There is no allegation that would give to the plaintiffs a cause of action against the directors, it not being alleged that the acts complained of have caused any injury to the plaintiffs, or depreciated the value of the stock held by them, nor do the plaintiffs ask for any judgment in their favor. The court is asked to enforce a demand in favor of the defendant corporation, by requiring the defendant Stadler to account to and pay to the defendant corporation the amount of these dividends declared in violation of the laws of the state of New Jersey, under which the corporation was incorporated.

The question presented is whether, upon these allegations of the complaint, the individual defendant would be liable to the corporation if it were the plaintiff seeking to enforce in the courts of this state the liability imposed upon the directors by the provisions of the law of the state of New Jersey or by the laws of this state. I do not un-

derstand that, where a corporation is under the control of directors who are liable to it for the payment of a sum of money, and a stockholder requests the corporation or its directors to institute an action to enforce that liability, which request is refused, the court should refuse to enforce the cause of action which exists against the directors of the corporation because its enforcement would be a hardship upon the directors who have thus become liable to the corporation, or would give an advantage to the stockholders which would be in excess of that to which they would have been entitled had the directors of the corporation complied with the law of the state from which it had received its charter. The plaintiffs bring their action, representing all of the common stockholders of the corporation. The result of a successful prosecution of this cause of action in favor of the corporation would undoubtedly tend to enhance the value of the plaintiffs' stock, and largely increase the assets of the corporation of which the plaintiffs are stockholders. If the corporation would recover from its directors the amount of dividends thus illegally paid, the common stockholders would undoubtedly be in a better position than if the corporation had refrained from paying these dividends to the preferred stockholders. But, in considering the right of the corporation to enforce a cause of action against a director who has rendered himself liable to it by reason of an illegal disposition of its capital, it is no answer to an action by the corporation that the enforcement of this liability would be an advantage to the stockholders over and above what they would have been entitled to had the directors complied with the law. I think we are bound to consider the sufficiency of the complaint as based solely upon the right of the corporation to enforce this liability imposed upon its directors by the statutes of the state of New Jersey and of this state.

The provision of the general corporation law of the state of New Jersey, set forth in the complaint, is alleged to be a part of the law under which the defendant corporation was incorporated. It first prohibits a corporation from making a dividend, except from the surplus or net profits arising from its business, and further prohibits the corporation from dividing, withdrawing, or in any way paying to the stockholders, or any of them, any part of its capital stock, except in accordance with the provisions of the act. It then provides that the directors under whose administration the same may happen shall be jointly and severally liable to the corporation to the full amount of the dividends made, or capital stock so divided, withdrawn, paid out, or reduced.

There are two aspects in which it is claimed that this action can be maintained. The first is that the courts of this state will enforce a liability imposed upon the individual defendant by the New Jersey statute to which attention has been called. It is, of course, settled that the courts of one state will not enforce the penal laws of other states, or allow a recovery for a penalty imposed upon a corporation or its officers by the state in which the corporation was incorporated. That the obligation imposed by this statute of the state of New Jersey is not penal has been decided by the Court of Errors and Appeals of the state of New Jersey in the case of Appleton v. American

Malting Co. (not yet officially reported) 54 Atl. 454. The court there says: "In our opinion, the liability imposed by the statute is not penal in its character. Its sole purpose is not to punish, but to provide for the making of compensation by wrongdoers for the injury sustained by their wrongful act." This is in line with the views that have been adopted in this state in construing provisions of a similar character. Dykman v. Keeney, 10 App. Div. 610, 42 N. Y. Supp. 488; Id., 16 App. Div. 131, 45 N. Y. Supp. 137, affirmed on opinion below 160 N. Y. 677, 54 N. E. 1090. But, even though the liability imposed by the statute is not penal in its character, it is settled that in this state, unless the liability sought to be enforced has for its foundation the principles of common law or is contractual, it will not be enforced. In Bank of China v. Morse, 168 N. Y. 458, 61 N. E. 774, 56 L. R. A. 139, 85 Am. St. Rep. 676, it is said:

"This court has held that where a liability sought to be enforced in our state courts has for its foundation the principles of common law, and is contractual, it will be enforced upon grounds of state comity. * * * But we have never held that such a liability will be enforced unless it exists under the principles of common law or under a contract which ought to be enforced."

In Marshall v. Sherman, 148 N. Y. 9, 42 N. E. 419, 34 L. R. A. 757, 51 Am. St. Rep. 654, it was held that:

"The liability of a stockholder of another state for the debts of a corporation, in case of its insolvency, created by the statutes of such state, while not penal in its nature, is not a liability arising upon contract in a general sense, and an action to enforce such liability in this state is not maintainable upon the theory that it is contractual and primary."

In the absence of a statutory prohibition, I know of no principle that would make the director of a corporation liable to the corporation for a distribution as dividends to the stockholders of the capital of the corporation, so long as the payment of such dividends does not impair the power of the corporation to discharge its indebtedness. The capital of a corporation belongs to its stockholders after its indebtedness is paid. While the legal title to the property vests in the corporation, the stockholders are the beneficial owners of the capital, whether more or less than its authorized capital stock, after provision is made for the payment of its debts; and, in the absence of a statutory prohibition, distribution of a portion of the capital of the corporation to the stockholders according to their respective interests, where each stockholder received his proportionate share of the total amount distributed, would not give to the corporation a cause of action to compel the director to repay into the treasury of the corporation the amount of money thus distributed. A different question is presented where the directors have appropriated the money themselves, or where by malfeasance or negligence they have wasted the property of the corporation. But a mere distribution of the property of the corporation among its stockholders would not, at common law, be such a waste or misappropriation of its property as would justify the corporation in maintaining a cause of action against the directors for the amount thus distributed.

Take the case of a corporation whose directors have distributed a portion of its property among its stockholders as dividends upon their

stock, and subsequently, upon the corporation being dissolved, there being still sufficient to provide for the indebtedness, the receiver seeks to enforce against the directors this liability to recover from them the amount of the dividend paid from the capital of the corporation. There the stockholders have already received a portion of the capital of the corporation to which they were entitled. The principles of equity would not require that the directors should repay to the receiver the sum of money that had been already paid by the corporation to its stockholders, so that the stockholders will receive, in addition to what they were entitled. to as the property of the corporation, this additional sum which the directors have been compelled to pay and to which they were neither legally nor equitably entitled. I do not see, therefore, how this liability of the directors to repay to a corporation an amount of its capital stock that the corporation has already paid in dividends to its stockholders can be said to rest upon principles of common law. A receiver representing creditors of a corporation, whose directors have taken a portion of its assets which they were bound to apply to the payment of its debts, and applied it for the purpose of distribution among the shareholders, might occupy a different position; but, assuming the relation that exists between the corporation and the directors to be that of cestui que trust and trustee, the trustee is certainly not responsible to the cestui que trust for property paid by the trustee to the cestui que trust, and to which the cestui que trust is entitled.

Nor is this obligation of the directors contractual in its nature. There is no contract between the corporation and its directors that they will not divide any of the corporate property among the stockholders. In considering a similar provision in the Revised Statutes of this state, it was held by the Court of Appeals in Williams v. Western Union Tel. Co., 93 N. Y. 162, that these provisions were intended to prevent the division, distribution, withdrawal, and reduction of the property of the corporation below the sum limited in its charter or articles of association for its capital, but not to prevent its increase above that sum. "The purpose was to prevent its depletion of the property of the corporation, thereby endangering its solvency; * * * and, in case the directors violated any of the provisions of the section, they were made individually liable to the corporation and to its creditors, in the event of its dissolution, to the full amount of the capital stock of the company so divided, withdrawn, or reduced. All these provisions show that it was the purpose of the legislature, by means of them, to create a property capital for the corporation, and then to keep that intact so as to secure the solvency of the corporation and its responsibility to its creditors."

The liability of the defendant thus neither resting upon the common-law liability of a director, nor being in its nature contractual, it falls within the class of liabilities imposed by the statute of another state that cannot be enforced in this state. In Marshall v. Sherman, supra, it was said:

"The question is thus presented whether a right of action unknown to the common law, and existing only by force of the statutes of another state, can be enforced in the courts of this state, or outside of the local jurisdiction

where the corporation is domiciled. The defendant's relation to the corpo-
ration is governed by the laws of the state of its creation, and the general
rule is that the statutory liability of stockholders in foreign corporations can-
not be enforced except at the domicile of the corporation, when the law of
the domicile provides the remedy. * * * But, without reference to the
special and peculiar provisions of these statutes, we think that the general
current of authority is to the effect that such enactments are to be enforced
only within the jurisdiction of the sovereignty where they exist. * * *
In the case at bar the plaintiff's right of action has no other legal or moral
basis than the fiat of a Legislature of another state. It is a principle of
universal application, recognized in all civilized states, that the statutes of
one state have ex proprio vigore no force or effect in another. The enforce-
ment in our courts of some positive law or regulation of another state de-
pends upon our own express or tacit consent."

The second question presented is whether this liability can be en-
forced under the provisions of section 60 of the stock corporation
law (chapter 564, p. 1066, Laws 1890, as amended by chapter 688, p.
1824, Laws 1892, and chapter 384, p. 314, Laws 1897). It is there
provided:

"Except as otherwise provided in this chapter, the officers, directors and
stockholders of a foreign stock corporation transacting business in this state,
except moneyed and railroad corporations, shall be liable under the provi-
sions of this chapter, in the same manner and to the same extent as the
officers, directors and stockholders of a domestic corporation, for (1) the mak-
ing of unauthorized dividends. * * * Such liabilities may be enforced in
the courts of this state, in the same manner as similar liabilities imposed
by law upon the officers, directors and stockholders of domestic corporations."

When this act was passed, and these dividends were declared, sec-
tion 23 of the stock corporation law (Laws 1892, p. 1829, c. 688) pro-
vided:

"The directors of a stock corporation shall not make dividends, except from
the surplus profits arising from the business of such corporation; nor divide,
withdraw or in any way pay to the stockholders, or any of them, any part
of the capital of such corporation, or reduce its capital stock, except as au-
thorized by law. In case of any violation of the provisions of this section,
the directors under whose administration the same may have happened, ex-
cept those who may have caused their dissent therefrom to be entered at
large upon the minutes of such directors at the time, or were not present
when the same happened, shall jointly and severally be liable to such corpo-
ration and to the creditors thereof to the full amount of the capital of such
corporation so divided, withdrawn, paid out or reduced."

The provisions of section 60 of the stock corporation law (Laws
1897, p. 314, c. 384) undoubtedly gave to a foreign corporation trans-
acting business in this state the power to enforce against its directors
a liability for making unauthorized dividends to the same extent as
the directors of a domestic corporation would be liable. The New
Jersey statute expressly prohibited the directors of the defendant
corporation from making any dividends except from the surplus or
net profits arising from its business, and prohibited the corporation
from dividing, withdrawing, or in any way paying to the stockhold-
ers, or any of them, any part of its capital stock, or reducing its
capital stock, except in accordance with the provisions of the act. If
this defendant were a domestic corporation, these dividends (admit-
ting the allegations of the complaint) would be unauthorized by the

law of this state, and they are prohibited by the law of the state from which the corporation has received its charter. It is therefore clearly an unauthorized dividend, or a dividend not authorized by the law binding upon the defendant corporation, and which it was expressly prohibited from making. Section 60 of the stock corporation law could only apply to a foreign corporation where a dividend was made in violation of the law which controlled the corporation. There is no provision in the law of this state which affects or could affect the right of a foreign corporation to declare dividends. The payment of a dividend out of the capital stock by a domestic corporation is prohibited, and such a dividend would be an unauthorized dividend in the case of a domestic corporation; and the evident intent of this statute was to allow a foreign corporation transacting business in this state power to recover from its directors the amount of an unauthorized dividend in the same manner as a domestic corporation could recover the amount of an authorized dividend from its directors. The directors are to be liable "in the same manner and to the same extent as the directors of a domestic corporation, and such liability may be enforced in the courts of this state in the same manner as similar liabilities imposed by law upon the directors of a domestic corporation. By section 23 of the stock corporation law the liability imposed upon directors of a domestic corporation for making unauthorized dividends was that those directors who joined in making a dividend thus prohibited were jointly and severally liable to the corporation to the full amount of the capital of the corporation divided, withdrawn, paid out, or reduced, and this is the same liability that is imposed upon the directors by the New Jersey statute. Reading these two sections together, it would seem that it was the intention of the Legislature to impose upon the directors of a foreign corporation transacting business in this state a liability to the corporation for the amount of its capital divided among stockholders, when such dividend was prohibited by the state from which the corporation had received its charter. We think, therefore, that section 60 of the stock corporation law authorized the defendant corporation to maintain an action in this state to recover from its directors jointly and severally the amount of the capital of the corporation divided among its stockholders, and that it was therefore error to dismiss the complaint.

Section 23 of the stock corporation law was amended by chapter 354, p. 961, Laws 1901; but it is not necessary to consider the effect of that act, for by section 5 it is provided that the act shall not affect any action or proceeding pending in any court at the time it takes effect, and this action was commenced in May, 1900, before the amending act was passed. As we have reached this conclusion as to the first cause of action, it is not necessary to consider the second cause of action.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellants to abide the event.

McLAUGHLIN, J., concurs. LAUGHLIN, J., concurs on last ground. PATTERSON, J., concurs in result.

HATCH, J. I agree with Mr. Justice INGRAHAM that this action is maintainable, and in the reasons which he assigns therefor on the last ground, as stated in his opinion. I think also that the courts of this state will enforce the liability created by the New Jersey statute for a violation of its terms. This is the sole question presented by the demurrer relating to the cause of action predicated upon the statute, and the answer thereto is dependent upon the fact as to whether the liability sought to be enforced has for its foundation a contractual liability recognized by the principles of the common law. If so, the liability will be enforced as a matter of state comity. The relation which exists between the directors of a corporation, the corporation itself, and its stockholders is fiduciary in character. In strict law it does not create the relation of trustee and cestui que trust, but it is fiduciary, and is of the nature of such relation. Duncomb v. N. Y., H. & N. R. R. Co., 84 N. Y. 190; Mabon v. Miller, 81 App. Div. 10, 80 N. Y. Supp. 979. The property of a corporation is vested in it, and not in its stockholders. It represents the united association of all the shareholders, and holds the title of whatever is contributed thereto. The shareholders, however, are the real or equitable owners of the property, and the corporation holds the same in trust for the shareholders, and the trust thus created is the subject of equitable cognizance. The management of the corporation is intrusted to directors, and they thereby become the agents of the corporation as to third parties, and the trustees of the corporation and its shareholders. They are bound to care for its property, and in the management of its affairs are bound to exercise the utmost good faith. If a violation of their duty result in damage to the property and is a waste of its assets, they are liable, and may be required to account in equity to the corporation the same as ordinary trustees. Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667. It is clear, therefore, that if the act of the directors in this case operated in law as a waste of the corporate property, for such act they would be answerable in an action at common law for waste. Among the obligations resting upon directors is to keep the corporate property intact in order that it may remain solvent for the purpose of being answerable to the creditors of the corporation, and also that it may be kept intact as a going concern to enable it to carry out the purposes of its creation for the benefit of its shareholders, as was designed when the interests were united, and for which the incorporators and shareholders contributed their funds. It has long been settled that the directors are not authorized to declare dividends out of the capital stock of the corporation as between it and its creditors. Such distribution depletes the fund upon which the creditors have the right to rely for the payment of their obligations, and upon the faith of which the debts were contracted. Williams v. Western U. Tel. Co., 93 N. Y. 162. The indebtedness created for subscription to shares of capital stock creates a contractual relation, and an action will lie against such subscriber to the shares of a foreign corporation within this state to recover for the debt created thereby. Stoddard v. Lum, 159 N. Y. 265, 53 N. E. 1108, 45 L. R. A. 551, 70 Am. St. Rep. 541. And this rule has been carried to the

extent of enforcing the statutory liability of a resident stockholder for the debts of an insolvent corporation created by statute. Howarth v. Angle, 162 N. Y. 179, 56 N. E. 489, 47 L. R. A. 725. In principle the declaration and payment of a dividend from the capital stock creates a liability in favor of creditors of the corporation. Such liability would be contractual in its nature, as the act of declaring and paying from the corporate capital would depreciate the same, be a wrongful distribution of it, and would constitute a breach of the contract with the creditor of the corporation, who dealt upon the faith of the corporate property, and this is so whether such liability be created by statute or rests upon principles of the common law. 2 Thompson on Corporation, § 1536, and cases cited. The rule respecting the obligation which the corporation and its directors owe to the shareholders of the corporation is not different, and rests upon the same principles. The aggregation of the capital and the creation of the corporation was to accomplish the purpose which such persons had in mind at the time when the money was contributed and the corporation formed. The obligation then resting upon the corporation and its directors towards its stockholders was to keep its capital unimpaired in order that it might have a continued existence as a going concern and accomplish the purpose designed by its creators. The corporation took the property and money contributed in trust for such purpose, and the directors in the management of the corporate enterprise are charged with the obligation in this respect of duties which are fiduciary in character, and for the violation of which the corporation may call them to account. In Kent v. Quicksilver M. Co., 78 N. Y. 159, it was said by Folger, J.:

"Shares of stock are in the nature of choses in action, and give the holder a fixed right in the division of the profits or earnings of a company so long as it exists, and of its effects when it is dissolved. That right is as inviolable as is any right in property, and can no more be taken away, or lessened, against the will of the owner than can any other right, unless power is reserved in the first instance when it enters into the constitution of the right, or is properly derived afterwards from a superior lawgiver. The certificate of stock is the muniment of the shareholder's title, and evidence of his right. It expresses the contract between the corporation and its stockholders and himself; that contract, he being unwilling, cannot be taken away from him or changed as to him without his prior dereliction or under the conditions above stated."

2 Thompson on Corpor. § 2152, and cases cited; Holmes v. Willard, 125 N. Y. 75, 25 N. E. 1083, 11 L. R. A. 170.

Such right of action is contractual in its nature, and rests upon well-settled principles of the common law. The declaration of payment of the dividends from capital constituted a breach of the contract between the corporation and its stockholders, and a breach of trust by the directors charged with the management of the corporation, and it being averred that the effect of such act was to waste the corporate property, a cause of action arose thereon in favor of the corporation, and, upon its refusal to bring the action, it may be maintained by a stockholder. Flynn v. Brooklyn C. R. R., 158 N. Y. 493, 53 N. E. 520. The cases are uniform in holding that where the liability rests upon these principles the obligation imposed by the statute will be enforced.

As said by Martin, J., in Bank of China v. Morse, 168 N. Y. 458, 61 N. E. 714, 56 L. R. A. 139, 85 Am. St. Rep. 676:

"This court has held that where a liability sought to be enforced in our state courts has for its foundation the principles of common law, and is contractual, it will be enforced upon grounds of state comity."

The courts of this state have held that liability imposed upon directors of a similar character by our own statutes is remedial, and is not in the nature of a penalty. Dykman v. Keeney, 10 App. Div. 610, 42 N. Y. Supp. 488; Id., 16 App. Div. 131, 45 N. Y. Supp. 137, affirmed on opinion below 160 N. Y. 677, 54 N. E. 1090. As the statute in question imposed a liability for a breach of duty upon the part of the directors, which amounted to a waste at common law, and was in violation of the duty which it owed to its stockholders and creditors, and the enactment itself is in harmony with the provisions of the statutory law of this state upon this subject, it would seem as if principles of comity authorized an action within this state to redress the wrong, especially as it appears that the wrongful act was committed within the state, and the corporation has an office and carries on business herein. Marshall v. Sherman, 148 N. Y. 9, 42 N. E. 419, 34 L. R. A. 757, 51 Am. St. Rep. 654, does not conflict with this view. It is easily distinguishable, as shown by Vann, J., in Howarth v. Angle, supra, where he says:

"The action was founded upon a legal statute, which not only created the liability, but also provided a peculiar and complicated remedy, unknown to our courts, which could not be entirely enforced in this state."

In Bank of China v. Morse, supra, the defendant sought to enforce a liability against a shareholder for the whole amount unpaid upon such shares for the benefit of a new corporation in which he had no interest. The court held that there was no liability on his part to pay for the benefit of a new corporation; nor could liability be enforced, based upon comity, where it was not shown that the liability was necessary for the payment of debts, but was for the benefit of a new corporation under a scheme of reorganization which the English courts, where the corporation had its existence, had held to be invalid. Manifestly, the case as an authority has no application to the present, and in terms it admits that liability would attach and an action could be maintained under the circumstances existing in this case. In point of fact, the statute of the state of New Jersey upon this subject, as well as our own, does little more than lay down a rule of damage to be enforced against directors for breach of duty. At common law a recovery could be had for the waste, but the extent of recovery would depend upon the damage sustained by the corporation and be the subject of proof. The statute measures the loss sustained, which is usually the correct amount, and authorizes a recovery therefor of the individuals who produced that result. The action authorized by the statute is founded upon sound principles, which have always been clearly recognized and enforced, and which foreign states, upon well-settled rules of comity, have applied to all cases coming within their jurisdiction.

The judgment should therefore be reversed, and a new trial granted, with costs to the appellants to abide the event.